FILED
99 OCT -7 AM 10: 10
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANNETTA M. COHILL, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CV 98-BU-2983-S |
| ELASTIC CORPORATION OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |

ENTERED
OCT 0 7 1999

## MEMORANDUM OPINION

This case is presently pending before this Court on Defendant's Motion for Summary Judgment. (Doc. 14) Plaintiff Annetta M. Cohill sued Defendant Elastic Corporation of America, her former employer, alleging that she was denied one or more transfers, that she was disciplined and discharged on the basis of her race, that she was disciplined and discharged in retaliation for filing a complaint of discrimination with the EEOC, and that she was denied one or more transfers and a shorter lunch break on the basis of sex. This Court has reviewed the record and determined that Elastic Corporation's Motion for Summary Judgment is due to be granted in part and denied in part.

SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an opportunity to test the mettle of their case before trial. On a motion for summary judgment, this Court must assess the entire

record in order to ascertain whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)(quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56(e)). Summary judgment is appropriate only if the Court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying evidence in the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party's burden is not meager; it must illuminate for the Court the reasons why the non-moving party cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Clark*, 929 F.2d at 608. The moving party's burden was set forth in *Clark* as follows:

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. Even after *Celotex* it is never enough to simply state that the non-moving party

cannot meet its burden at trial.

*Id.* (citing *Celotex*, 477 U.S. at 323-25, 106 S. Ct. 2553-54).[1] In other words, the moving party must demonstrate that its motion is due to be granted before the burden shifts to the non-moving party to demonstrate an issue for trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.*; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied*

---

[1] The Eleventh Circuit recognized that *Celotex* created "an exception to the *Adickes* [*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)] rule for [an] **uncommon** situation," i.e., "when neither party could prove either the affirmative or the negative of an essential element of the claim." *Clark*, 929 F.2d at 607, 608 (emphasis added). In this "uncommon situation," the *Celotex* exception allows a moving party to carry its burden by showing or "pointing out," by reference to record, that the non-moving party cannot prove its claim. *Id.* at 607.

*sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995).

In resolving whether a given factual dispute requires submission to a jury, the Court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55, 106 S. Ct. at 513. The Court, however, must not weigh conflicting evidence for probity or make credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. The court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993)(citations omitted). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *EPL, Inc. v. USA Federal Credit Union*, 173 F.3d 1356, 1360 (11th Cir. 1999)(quoting *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1369 (11th Cir. 1982). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## STATEMENT OF FACTS[2]

Plaintiff, Annetta M. Cohill (black/female) began working for Defendant, Elastic Corporation of America, in April of 1994. Plaintiff was an inspector, or Lindley machine operator, in the Put Up Department; the quality and speed of Plaintiff's work as an inspector was average or above average. At the time of the incidents made the subject of this action, her supervisor on the first shift was Greg Kelley(white/male), Charlie Andrews (white/male) was the Department Manager, and Jean Gould (white/female) was the second-shift supervisor.

On December 6, 1997, Plaintiff filed an EEOC charge alleging discriminatory harassment. In that charge, she alleged that she had been harassed by her immediate supervisor on the basis of her sex and her race, and that the latest incident occurred on October 5, 1997. With reference to this charge, Plaintiff testified that she had been harassed "by being on the machine, being coming [sic] back from breaks on time and being at my machine at times when whoever come looking for me;" she also felt harassed because she was disciplined for wearing too much perfume. Doc. 16, pp. 155-56, 161-62. She also alleged that Defendant had denied her request for a transfer on a discriminatory basis.

On December 13, 1997, Plaintiff was scheduled to work from 3:00 a.m. until 9:00

---

[2]As required when determining a Motion for Summary Judgment, the Statement of Facts reflects the facts in the light most favorable to Ms. Cohill, the non-moving party. All disputed facts are resolved in her favor and all reasonable inferences arising from those facts are drawn in her favor. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 3188-89, 111 L. Ed. 2d 695 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997).

a.m. She clocked in at 4:03 a.m. and clocked out at 2:01. Plaintiff was aware that it was a violation of company rules to be late for the start of her shift and to work past the end of her shift without permission. She admitted that she clocked in an hour past the time set for the start of her shift. However, she contends that she had permission from Greg Kelley and Jean Gould to work past the end of the shift.

The record contains a written warning regarding this incident. It states:

On December 13, 1997, you were scheduled to work from 3:00 AM until 9:00 AM as a Linley operator. You clocked in at 4:03 and clocked out at 14:01, a total of 9.97 hours. This action was taken without the knowledge or approval of your supervisor, Greg Kell[e]y. Work schedules and hours to be worked are the purview of ECA management and are not up to the discretion of individual employees.

Doc. 16, Exh. 7. The written warning also contains a notation that the warning is "final" and that the "possible consequence[ ]" is "termination. Mr. Kelley signed the warning and, in the space provided for employee signature, it states, "Refused to Sign." Id.

Plaintiff testified that Mr. Kelley and Mr. Anderson discussed the incident with her but they did not show her the warning, ask her to sign the warning, or give her a copy of the warning. She also testified that Mr. Kelley did not tell her that this was a "final warning."

The incident that provoked Plaintiff's termination occurred on February 14, 1998. Plaintiff was looking for some job tickets that she needed to complete her work; the tickets were not in the ticket box, the proper place for the tickets. Plaintiff could not leave work without completing the tickets. Arthur Foley (white/male), a material handler, was responsible for placing the tickets in the ticket box. Plaintiff saw Mr. Foley leaving at the end of shift and yelled across the plant to him, asking him where her tickets were. Mr.

Foley indicated that he did not know, either by lifting his hands and shrugging, or by yelling back that he did not know. Although Defendant has presented evidence that this interchange was heated and that Plaintiff used profane language, and that another employee was scared by the incident,[3] for purposes of summary judgment, this Court – applying the well-established summary judgment standards – finds that the incident did not involve any profanity and that Plaintiff raised her voice to Mr. Foley only to be heard over the machines. This version of the incident is supported by the testimony of Plaintiff and Mr. Foley.

Jean Gould, second-shift supervisor, witnessed the incident and reported it to Mr. Andrews. She also identified and interviewed the witnesses before they spoke to Mr. Andrews. Ms. Gould interviewed a number of employees that were not subsequently interviewed by Mr. Andrews; her affidavit states, "As part of an investigation, I interviewed in great detail the witnesses to the incident including Shifflet, Nieves, Franklin and Brasher. I then talked to other employees to determined [sic] whether they heard anything and whether they were upset." Doc. \*\*, Exh. 3 ¶ 7. The record before this Court does not indicate the result of the interview of these other employees; i.e., whether they witnessed the incident, whether they were upset, and, perhaps most conspicuously omitted, whether they supported Ms. Gould's report of the incident. Ms. Gould did not interview Plaintiff or

---

[3]Defendant's Brief states that "several" employees were "extremely frightened" by Plaintiff's behavior. Def. Brief, p. 9. The evidence submitted on behalf of Defendant indicates that only one of the employees who witnessed the incident, Stephanie Shifflet, was afraid. Moreover, the evidence supports an inference that the decision-makers knew that only one employee indicated that she was frightened by the incident.

Mr. Foley.

Plaintiff has presented evidence that Ms. Gould used racial slurs when discussing the termination of two black/female employees. Ms. Gould, in the presence of at least three white employees said, "[I]t took me two fucking years to get rid of these niggers." She also testified that Ms. Gould said she had "proudly" given these two employees their last paychecks.

Mr. Andrews talked with the witnesses that Ms. Gould identified and brought them to his office. He spoke with Mr. Foley, who told him that Plaintiff did not use profanity and that she raised her voice only so as to be heard over the noise of the machines in the plant. He told Mr. Andrew that Plaintiff was not angry or incensed. Moreover, Mr. Foley testified that Mr. Andrew told him that Plaintiff had "cussed" Mr. Foley.

The next work day after this incident, February 16, 1998, Mr. Kelley told Plaintiff that she was suspended because she had used profanity in the subject encounter with Mr. Foley. He also told her that Mr. Andrews would "be in touch" and "let [her] know something." Doc. 16, p. 199. Mr. Andrews did not contact Plaintiff. Further, when she contacted him to ask him how long she was suspended, he laughed and told her she had been terminated.

Defendant contends that Plaintiff was terminated for violating company rules (the Mr. Foley incident) after she had received a final warning.

Plaintiff filed a charge of discrimination with the EEOC on or about February 24, 1998. In that charge, Plaintiff alleges race and sex discrimination and retaliation with regard to discipline on December 16, 1997 and her termination on February 16, 1998.

## DISCUSSION

### A. TRANSFER

Defendant contends that it is entitled to a summary judgment on Plaintiff's claim of discriminatory failure to transfer because Plaintiff cannot establish a prima facie case. Specifically, Defendant contends that Plaintiff cannot show:

> (1) the positions for which she sought a transfer; (2) whether there was a need for someone with Plaintiff's skills; (3) qualifications of the successful candidates;[4] and (4) any racial animus by the decision makers of the other departments where she allegedly sought a transfer.

Def. Brief, p. 18.

To establish a prima facie case of discriminatory failure to transfer, Plaintiff must show (1) she was in a protected class; (2) she was qualified for a position for which the employer was seeking applicants; (3) despite her qualifications for the position, she was not selected; and (4) someone outside the protected class was selected for the position. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).

The parties do not dispute that Ms. Cohill's protected class, for purposes of this action, is her race, African-American. Defendant contends, however, that Plaintiff cannot

---

[4] Relative qualification is not an element of the prima facie case in a discriminatory selection (promotion/hiring/transfer) case. *Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998)("[W]e hold that [the] district court in this case erred in imposing as part of the prima facie case a requirement that each plaintiff establish that the successful applicant for his or her coveted position was less than or equally qualified to hold the position. Although a plaintiff may be forced to address relative qualifications if the defendant presents them to rebut the plaintiff's presumption of discrimination, the plaintiff need not introduce evidence regarding relative qualifications before then; she need only prove that she herself was qualified to perform the coveted job.").

show that she applied fir a transfer to an open position. Defendant cites this Court to Plaintiff's deposition testimony, which is as follows:

> Q. ... [W]hat is the basis for your claim that you were denied a transfer?
>
> A. Well, I came – I am trying to remember that – when I asked for a transfer because I wanted to get off of the Lindleys. And I had been working for a long time and I wanted to go to another job.
>
> Q. Who did you ask?
>
> A. Charles Pate and Greg Kelly.
>
> Q. Did you actually apply for jobs?
>
> A. No, because one wasn't posted at the time.
>
> Q. Were you interviewed for any jobs that you didn't get?
>
> A. Yes.
>
> Q. Are you claiming you didn't get those jobs because you were black and female?
>
> A. No.

Cohill Depo. (Doc. 16), pp. 160-61.

Plaintiff offers no evidence as to the specific position or positions for which she was qualified and for which Defendant was seeking applicants. Therefore, the Court finds that Plaintiff has not established a prima facie case of discrimination with regard to her claim that she was denied a transfer on the basis of her race.

Defendant's Motion for Summary Judgment is due to be granted as to Plaintiff's claim of discriminatory failure to transfer and that claim is due to be dismissed.

    B.    <u>DISCIPLINE</u>

Defendant contends that Plaintiff claims disparate treatment relating to each disciplinary action taken against her. However, Plaintiff's February EEOC charge (Doc. 10) and Plaintiff's Complaint (Doc. 1 ¶ 7) allege disparate treatment with regard to discipline after she filed a charge of discrimination in December 1997.[5]

The only disciplinary actions taken against Plaintiff after she filed the December EEOC charge were (1) a written warning on December 16, 1997 for violations of attendance policy and (2) termination of her employment for violation of various work rules arising from the exchange with Mr. Foley about her tickets. Therefore, the Court finds that Plaintiff's claims are so limited.

Plaintiff contends that she was given a written warning on December 16, 1997 in retaliation for filing a charge of discrimination on December 6, 1997 and on the basis of race.

As a preliminary matter, the Court notes that Plaintiff disputes that this was a "final" warning, and as grounds therefore, contends that Defendant has failed to include the "final" written warning as an exhibit in its evidentiary submission in support of this motion. However, Defendant separately filed the complete deposition of Plaintiff, together with the

---

[5]This Court ordered Plaintiff to submit *all* EEOC charges at issue in this case. Plaintiff, in response to this order, submitted only one EEOC charge, the second charge, signed on February 24, 1998. The February EEOC charge alleges "retaliatory disciplinary actions (December 16, 1997)" and termination based on her race and sex and in retaliation for filing a prior charge of discrimination. (Doc. 10). The Complaint likewise alleges, "Defendant's disparate treatment began shortly after plaintiff filed a charge of discrimination with the EEOC in December 1997." Therefore, this Court concludes that Plaintiff's claims are limited to the second EEOC charge and, thus, only to the December 16, 1997 disciplinary action and her termination.

original exhibits. (Doc. 16) Therefore, the Court has a copy of this disciplinary action before it. This warning has "final" written across the top of the document; however, Plaintiff denies that she ever saw or was given the written document or was counseled that the December written warning was a "final" warning. Therefore, for purposes of summary judgment, the Court finds that Plaintiff was not told that this warning was a "final" warning.

### 1. Race Discrimination

In order to establish a prima facie case of discrimination with regard to the December written warning on the basis of her race, Plaintiff must establish that other employees, who were not black, were not disciplined or received more favorable treatment for similar work rule violations. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984).

Plaintiff was written up for coming in one hour late and working past her scheduled shift without permission. The record contains evidence that Plaintiff was late that day; however, Plaintiff denies that she worked past her shift without permission. The only comparators identified in Plaintiff's brief in opposition to Defendant's Motion are Dennis McIntyre and Perry Jones, both white males who were eventually terminated for being intoxicated at work.

These two comparators are not similarly situated to Plaintiff. *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999). Therefore, the Court finds that Plaintiff has failed to establish a prima facie case of discrimination with regard to the December written warning.

Defendant's Motion for Summary Judgment as to Plaintiff's claim of racial discrimination with regard to the December written warning is due to be granted and that

claim dismissed

    2.    Retaliation

In order to establish a prima facie case of retaliation in violation of Title VII, Plaintiff must establish: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993).

> In order to satisfy the "causal link" prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that **the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action**. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993). Since corporate defendants act only through authorized agents, in a case involving a corporate defendant **the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression and acted within the scope of his or her agency when taking the action**. See *Goldsmith*, 996 F.2d at 1162 (general agency principles govern the circumstances in which a principal will be held liable for the acts of its agents under Title VII).

*Raney v. Vinson Guard Service*, 120 F.3d 1192, 1197 (11th Cir. 1997)(emphasis added).

The supervisor's signature on the December written warning is that of Greg Kelley. There is no evidence that Mr. Kelley was aware, at the time he issued the December written warning, that Plaintiff had filed a charge of discrimination with the EEOC. Mr. Kelley submitted an affidavit in which he states that he and Mr. Anderson determined that Plaintiff should receive the written warning. Likewise, there is no evidence that on December 15, 1997 –the day before Plaintiff received the written warning and the day Mr. Kelley discussed the incident with Mr. Andrews – that Mr. Andrews was aware that Plaintiff had filed an EEOC charge.

There being no evidence that "the corporate agent who took the adverse action was aware of the plaintiff's protected expression," Defendant's Motion for Summary Judgment as to Plaintiff's claim of retaliatory discipline with regard to the December 1997 written warning is due to be granted and that claim is due to be dismissed.

C.  DISCHARGE

Ms. Gould and Mr. Andrews were the persons involved in the decision to terminate Plaintiff. *See Elrod v. Sears Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)(decision makers included ultimate decision maker **and** employee that investigated the incident and reported to ultimate decision-maker). "Disparate treatment analysis requires that none of the participants in the decision-making process be influenced by racial bias." *Jones v. Gerwens*, 874 F.2d 1534, 1541 n.12 (11th Cir. 1989). Therefore, the actions and motivations of both Ms. Gould and Mr. Andrews are relevant.

Defendants contend that Ms. Gould is not a decision-maker and that any racial bias she may have harbored did not affect its decision because Mr. Andrews conducted an investigation free from Ms. Gould's influence. The Court disagrees; a reasonable jury could find that the investigation of the claims was controlled by Ms. Gould and that the only witnesses she presented to Mr. Andrews were witnesses unfavorable to Plaintiff. Moreover, the only witness that Mr. Andrews interviewed that Ms. Gould did not interview was Mr. Foley, who testified that he did not confirm Ms. Gould's version of the incident.

Significantly, Mr. Andrews did not interview Plaintiff regarding the incident. The Eleventh Circuit Court of Appeals recently held, "When the employer makes an effort to determine the employee's side of the story before making a tangible employment decision

affecting that employee, . . . it should not be held liable under Title VII for that decision based only on its employee's hidden discrimination motives." *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1250 (11th Cir. 1998). Defendant, without citing *Llampallas*, appears to argue that Mr. Andrews did an independent investigation and was the sole decision maker. The Court finds that the record contains sufficient evidence to establish for purposes of summary judgment that Ms. Gould was a decision maker with regard to Plaintiff's termination, and that Mr. Andrews made no effort to determine Plaintiff's side of the story. Thus, should a jury find that Ms. Gould acted with a discriminatory or retaliatory motive, such motive could provide a basis for Defendant's liability.

1. Retaliation

Defendant's Motion for Summary Judgment is due to be granted and Plaintiff's claim for retaliatory discharge is due to be dismissed on the same grounds set forth for dismissing her retaliatory discipline claim; the record contains no evidence that either Ms. Gould or Mr. Anderson were aware of Plaintiff's protected expression.

2. Race

The Court finds that the record contains sufficient evidence of genuine issues of material fact and Defendant is not entitled to judgment as a matter of law as to Plaintiff's claim of termination based on race. Fed. R. Civ. P. 56(c). Therefore, Defendant's Motion for Summary Judgment as to such claim is due to be denied.

D.  SEX DISCRIMINATION

Plaintiff has stipulated that all claims based upon gender are due to be dismissed. Therefore, Defendant's Motion for Summary Judgment as to Plaintiff's claims alleging sex discrimination is due to be granted and those claims dismissed with prejudice.

CONCLUSION

For the reasons set forth above, the Court finds that Defendant's Motion for Summary Judgment (Doc. 14) is due to be granted in part and denied in part. Plaintiff's only remaining claim is for race discrimination with regard to her termination and on this one claim Defendant's Motion for Summary Judgment is due to be denied. The Motion for Summary Judgment as to all other claims is due to be granted. The Court finds no existing material issue of triable fact as to the claims nullified by grant of summary judgment in favor of Defendant.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion.

DONE this ___6th___ day of October, 1999.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE